## DANIEL R. MITCHELL *vs.* WESTERN & ATLANTIC RAILROAD.

1. A railroad company is liable only for such damages as result from its mismanagement, neglect, or the want of due care and attention. And it is necessary for the plaintiff to show some act that will cast the burden of proof on such railroad company. The fact that a negro is run over and injured, while being transported by the road as a passenger, is not sufficient for that purpose.
2. The liability of a railroad for injuries to slaves in their transportation, is to be measured by the law applicable to passengers, rather than by that applicable to the carriage of common goods.
3. Less care and caution is necessary by the employees of a railroad, when stopping for wood and water only, than when stopping to take on or put off passengers.
4. It is no error in the Court to refuse to charge a principle of law, however sound, unless such principle has some application to the case on trial.
5. The fact that the superintendent of the road is on the train, and in the same car where the negro injured was seated, is not even a circumstance to charge the road for injuries received by the negro at that time.
6. If the train stop at a wood and water station, and start again in an unusual short time, or with unusual speed, or without blowing the signal whistle at all, or sufficiently long before starting to put persons on their guard, and an injury happens at the time to a slave passenger, any one of these facts will be sufficient evidence of neglect or mismanagement, to charge the road for all damages received at the time by such negro.

Case, in Cass Superior Court, and motion for New Trial. Heard and decided by Judge CROOK, October Term, 1859.

This was an action on the case, brought by Daniel · R. Mitchell against the Western & Atlantic Railroad, to recover damages for injuries received by plaintiff's slave on board the cars of defendant.

From the evidence it appeared that plaintiff, with his wife and children, and about ten of his negroes, took passage on the Western & Atlantic Railroad at Atlanta, for Kingston. The negroes were paid for as *passengers,* and went on the second-class passenger-cars; that somewhere between Atlanta and Kingston, the train stopped a very short time at a

wood and water station, and, upon starting, one of plaintiff's negroes (a boy about ten or twelve years old) was run over by the train and badly hurt. The train was immediately stopped, and the boy taken in and carried on to a station above and left. It did not appear from the evidence in what way he came to be run over ; whether he had got out and was about getting back into the car, when it started and ran over him, or whether he was standing out on the platform or steps, and was thrown off upon the cars starting off. The testimony was somewhat conflicting, too, as to the signal given by blowing the whistle when the train moved off ; some of the witnesses testifying that the train moved off before the signal was given ; others, that it moved off simultaneously with the blowing of the whistle, and the conductor of the train, and probably another, testifying that it moved off after, but immediately after, the signal was given. The jury, under the charge of the Court, found for the defendant ; whereupon, counsel for the plaintiff moved for a new trial, upon the following grounds, to-wit :

1st. Because the verdict of the jury is contrary to the weight of evidence.

2d. Because the Court charged the jury, that to entitle the plaintiff to recover, some negligence on the part of the defendant must be shown by proof, and that the mere fact of the injury having been done to the negro by his having been run over on the track, is not, of itself, *prima facie* evidence of negligence of defendant ; and to authorize a recovery, there must be some other proof of negligence.

3d. Because the Court charged the jury, that the liability of defendant in the case must be determined rather by the laws applicable to the carriers of passengers, than by those applicable to carriers of goods, and that defendant must have been guilty of negligence, or he is not liable.

4th. Because the Court charged the jury, that if the place where the cars stopped, and the negro was injured, (Barrow's Station,) was a wood and water station, and not a place for passengers to get on or off the cars, then there was no necessity for the cars to stop longer than was necessary to get a sufficiency of wood and water ; and especially so, as far as this negro was concerned, as he had started to go to Kingston, and had no business to get off at the station ; and that to make the defendant liable, it must be shown that he was

guilty of more negligence than it would have taken to make him liable, had the accident happened at a passenger depot, and not at a wood station.

5th. Because the Court refused to charge the jury as requested by plaintiff, that to neglect to exercise authority to prevent a thing, is, in legal contemplation, to permit it; and if the negro boy was placed under the care and control of the officers of the railroad, it was their duty, and they had the power and authority to place him in such a condition as to prevent an accident, to his injury accruing; and if they failed to do so, the railroad is liable, and the plaintiff entitled to recover. They may not only use coercion even to chains, if necessary for the protection of property from peril, but it is their duty to do so. Humanity to the slave, as well as a proper regard for the interest of the owner, alike, demand that the rules of law regulating such transactions should not be relaxed. The imprudence of slaves demand it. They are incapable of self-preservation, either in danger or disease, and especially one of the age and size of the boy William, sued for in this action, and this duty and office devolves upon those who, for the time being, have the custody and control of the slave, and if they fail fully to perform it, then it becomes the high and solemn duty of Courts to enforce it by the only means in their power—a direct appeal to the pocket of the delinquent party.

6th. Because the Court refused to charge the jury, as requested by plaintiff's counsel, that if the negro boy William was placed in the possession of, and under the control of the proper officers of the railroad, and James F. Cooper, superintendent of said railroad, was in the car with said negro boy and permitted him to go out of the car, by which he was injured, the railroad is liable for all the injury done to the boy and the loss the plaintiff sustained by it.

7th. Because the Court refused to charge the jury, as requested by plaintiff's counsel, that if the cars stopped at a wood and water station, and started without blowing the whistle or giving the usual signal, having stopped a much shorter time than is usual at such places; or if the cars started simultaneously with the blowing of the whistle or giving the usual signal—starting with unusual speed—and the negro boy was injured by it, then the road would be liable for all the injury done to the negro, and the jury ought to find for the plaintiff.

Mitchell *vs.* Western & Atlantic Railroad.

After argument, the presiding Judge overruled the motion for a new trial, and counsel for plaintiff excepted, and assigns as error said refusal.

AKIN, for plaintiff in error.

WOFFORD, *contra.*

*By the Court*—LYON, J., delivering the opinion.

The first ground of motion for new trial, that "the verdict of the jury was contrary to the weight of the evidence," was not argued or relied on, and is not, therefore, considered by this Court.

1. We cannot see that there is any error in the charge of the Court as stated in the second ground for new trial. The defendant, in cases of this sort, is only liable for such injuries as result from its mismanagement, neglect, or the want of due care and attention. The only question is, upon whom rests the burden of proof? And we can see no reason why it should not, in this case, as well as in all others of like character, be on him who holds the affirmative—the plaintiff. In different cases, different and various circumstances have been held sufficient to change the *onus:* such as the upsetting of the coach, running off the track, etc. The fact here relied on is, that the negro was a passenger, and was run over. This, in our opinion, is not sufficient, for the reason, that to have been run over as the negro was, he was, necessarily, not in the place where he ought to have been; that is, inside of the car.

2. The defendant undertook to transport the plaintiff's negro from Atlanta to Kingston as a passenger. In the transit, the negro was injured. The responsibility of the defendant for such injury to the plaintiff "must be measured by the law which is applicable to passengers, rather than by that which is applicable to the carriage of common goods," for the reason, as given by the books, that the slave has volition and feelings, which cannot be entirely disregarded or overlooked in conveying him from place to place. He can not be stored away like a common package. The carrier has not, and cannot have, the same absolute control over him that he has over inanimate matter. In the nature of things, and

in his character, he resembles a passenger, and not a package of goods. He is, in fact, a passenger, paid for as a passenger, and so treated and held, not only by defendant, but by plaintiff.

The doctrine of common-carriers, as to goods, does not apply to the carriage of slaves, and the carrier is not liable for the loss of, or injury to, slaves, unless the injury has been caused by the negligence or unskillfulness of himself or his agents.

3. From the statement of the charge of the Court, in fourth ground, the meaning of the Court below is not very clear; but taking the whole charge together, we think the Court meant simply to instruct the jury: that if the train stopped for wood and water only, less care or caution on its part was necessary, than if it had stopped for the purpose of taking on or putting off passengers; and if we are right in our unstanding of that charge, there was no error in the instruction.

4. There was no error in the refusal of the Court to give the charge requested by counsel for plaintiff, as stated in fifth ground of motion, for the reason, that the principles stated in that request, although sound legal prositions, when applied to the hirer of a slave, or to one who has the absolute control of the slave for the time, whose duty it is, not only to exercise proper care in the "supervision" of the slave, but also "to coerce him even to chains, if necessary for the protection of the property from peril." Yet, they have no relevancy, whatever, to this issue; for the defendants in the carriage of slaves, has no supervision or control of them. The slave has volition, the right of locomotion, and the defendant has no right to restrain him in the exercise thereof, by the use of chains or other violent means, unless there has been an express stipulation between the parties to do so, and this is not claimed to be the fact.

5. Neither was there error in the refusal of the Court to give the charge requested in sixth ground; because, although the Superintendent, Cooper, was in the same car with the negro boy injured, yet, there is not a particle of evidence that Cooper saw the boy go out of the car, or permitted him to do so; and while we put the decision, on this point, on this ground, we are not to be understood as holding or intimating that our decision would be different, if it was in proof

that he did see the boy go out and permitted him to do so, or rather did nothing to prevent him.    What I mean is, that that is a question we do not decide, because not properly before us; and it will be time enough to declare the rule when the facts make the question.  If owners desire the prohibition of a railroad to restrain the locomotion and volition of a slave in his transportation, it is easy to stipulate for such unusual service, and then there will be no doubt as to the right and power to supervise and control his actions, while under their care and control.

6. Some evidence was offered to the jury, on the trial in the Court below, that when the train stopped at Barrow's Station for wood and water, it started again in an unusually short time, with unusual rapidity; also, that this start was made without first blowing the whistle, or, if at all, not sufficiently long, before starting, to give warning thereof to persons in an exposed situation.    If these facts be true, or either of them—of which the jury are to judge—this is such evidence of neglect or mismanagement, on the part of defendant, as charges it with all loss or injury sustained by the plaintiff, in consequence of the cars running over the negro boy at that time, unless the defendant can affirmatively show that the injury to the boy did not result from this mismanagement or neglect, but from some other cause, and for which the defendant was wholly without blame or fault.    Hence, the Court below committed error in the refusal to give the request to charge as stated in the seventh ground of new trial, with such qualification as is here stated.

Judgment reversed.