Dissenting Opinion.
Ross, J.
From the facts in this case, it is evident that there were two causes, either of which might have brought about the injury for which damages are sought in this action, namely: The neglect of the brakeman, Demsky, of the freight train, to close the switch after his train had backed upon the side track and the *500 negligence of the engineer and fireman of the passenger train to stop their train in obedience to the rules of the company.
It requires no argument to show that in the absence of either of these acts of negligence the accident would not have occurred. For if Demsky had closed the switch, as it was his duty to do, the passenger train would have proceeded along the main track and there would have been no collision. By this neglect of duty on his part the passenger train was thrown upon the side track and collided with the freight train, resulting in the death of the decedent. On the other hand, if the decedent and his engineer had stopped their train when they saw that the switch target was without a light, and had not attempted to pass the switch until assured that it was closed, as it was their duty to do under the rules of the company, the accident could not and would not have happened. Without the intervention of either of these causes the accident could not have occurred, and the decedent would not have been killed.
Conceding that the jury, by their verdict, found that the appellant was guilty of negligence in retaining in its service the brakeman Demsky after it acquired knowledge of his incompetency, it still remains to be determined whether or not his negligence in leaving the switch open was the proximate cause of the injury or whether it was the result of some other cause, either that of some third person or of the decedent himself.
' In an action where it is shown that two causes combined produced the injury complained of, both of which causes are proximate in their character, one being the result of the defendant’s negligence and the other an occurrence for which neither party is to blame, the defendant will be liable, provided the injury would not have been sustained except for bis negligence. Grimes v. *501 Louisville, etc., R. W. Co., 3 Ind. App. 573, and cases cited.
It is a common, if not almost a universal, expression of courts, that every person is bound to anticipate the results which naturally flow from his acts, and for that reason is answerable for an injury resulting therefrom. But in the case of Milwaukee, etc., R. W. Co. v. Kellogg, 94 U. S. 469, Justice Strong, speaking for the court, says: “We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to this misfeasance or nonfeasance. They are not when there is sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. ’ ’
If a party does an act which might naturally produce an injury to another as its consequence, and before any such injury results, a third person does some act or omits to perform some duty, and this act or omission of the third person is the immediate cause of an injury which would not have resulted except for such act or omission, the act or omission of such third party is the immediate or proximate cause, and the act of the first party but an indirect cause; the causal connection between the act of the first party and the injury is broken by the interposition of the act or omission of the third party. Washington v. Baltimore, etc., R. R. Co., 17 W. Va. 190; Pike v. Grand Trunk R. W. Co. of Canada, 39 Fed. Rep. 255; Insurance Co. v. Tweed, 7 Wall. 44; Milwaukee, etc., R. W. Co. v. Kellogg, supra; Lewis v. Flint, etc., R. W. Co., 54 Mich. 55; Curtin v. Somerset, 140 Pa. St. 70; Wharton Neg. (2d ed.), sections 134 and 438.
In this case the only question to be determined is, *502 what was the proximate cause of the collision resulting in decedept’s death? The proximate cause is not necessarily the last preceding cause which conduced to the happening of the event, but it is the cause closest allied to the event without which it could not have happened. It is impossible, as is clearly demonstrated by the opinions of our most learned jurists, to state a fixed rule that can be applied in determining the proximate cause in all cases—much often depends upon the circumstances of the particular case, and what is, or what is not, a proximate cause will often have to be determined upon considerations of sound judgment and enlightened common sense, without the aid of any certain or infallible rule.
In Marble v. Worcester, 4 Gray, 395, Shaw, C. J., says: “The whole doctrine of causation, considered in itself metaphysically, is of profound difficulty, even if it may not be said of mystery;” and, again, “Perhaps no event can occur, which may be considered as insulated and independent; every event is itself the effect of some cause or combination of causes, and in its turn becomes the cause of many ensuing consequences, more or less immediate or remote. The law however looks to a practical rule, * * * and on account of the difficulty in unraveling a combination of causes, and of tracing each result, * * * to its true, real and efficient cause, the law has adopted the rule * * * of regarding the proximate, and not the remote cause of the occurrence which is the subject of inquiry.”
It appears to the writer that to solve the question of proximate cause in this case is a matter of little difficulty, as I hope to make clear.
To determine the cause efficient, we have but to consider what each of the parties were bound to anticipate would be the result of their acts and omissions, and when *503 that is understood, we have solved the main difficulty which presents itself.
The appellant was bound to know that trains proceeding along the road could not pass the switch when open. It also knew that under its rules governing the operation of its trains, no train was allowed to attempt to proceed with a switch in that condition, and it had a right to assume that those in charge of the passenger train would do their duty and would not attempt to proceed when the switch was open. The decedent knew that if he attempted to proceed with the switch open a collision must inevitably occur with whatever might be upon the side track.
The appellant was not bound to anticipate the happening of the accident by the omission of its duty to close the switch, unless it was also bound to anticipate that the decedent and his engineer would fail to do their duty. The law imposes no such duty on appellant, but only requires that appellant answer for the results which naturally flow from its negligence. It could not be expected that the decedent and his engineer, knowing that Demsky had left the switch open, would not do their duty and stop their train. On the contrary, it' was to be presumed that they would not, knowingly, cast themselves in the way of a danger which must inevitably result in injury.
“Where one party has been negligent, and a second party, knowing of such antecedent negligence, fails to use ordinary care to prevent an injury which the antecedent negligence rendered possible, * * the negligence of the second party is the sole proximate cause of the injury.” Bostwick v. Minneapolis, etc., R. W. Co., 51 N. W. Rep. 781.
The above language was quoted with approval by our Supreme Court in the recent case of New York, etc., R. *504 W. Co. v. Perriguey, 138 Ind. 414, which was an action to recover for an injury to an employe, alleged to have been the result of the company’s negligence in failing to furnish a headlight on an engine, by reason of which it collided with another train.
The facts in that case disclosed that while the railroad company was negligent in failing to furnish a good and sufficient headlight, which, had it been furnished, might have averted the accident, yet the facts disclosed that those in charge of the train in violation of an order of the company run their train out upon the main track, from a side track where they were to await the arrival and passage of the other train. From these facts the court held that it was not the negligence of the company-in failing to furnish a headlight that was the proximate-cause of the collision, but the negligence of the servants in running the train out on the main track in violation-of its order.
Again, in the case of McGahan v. Indianapolis Natural Gas Co., 140 Ind. 335, which was an action brought by the appellant to recover for an injury caused by the explosion of natural gas which had been negligently permitted to escape in the cellar of one Kilburn, and after repeated requests, and a promise by the company to shut off the gas so that no more would escape, McGahan, who had been employed by the owner of the property to find the leak, and repair the pipe in the cellar, went into the cellar with a lighted candle, and the accumulated gas exploded causing the injury. The court after reviewing the facts held that the failure of the company to turn the gas off; and thus permit its escape and accumulation in the cellar was not the proximate cause of the injury, but that the negligence of MeGahan in going into the cellar with a lighted candle was the proximate cause.
*505 If these cases are to stand, and be recognized as authority, I think them decisive of the question presented in this case as to the proximate cause of the decedent’s injury. In fact it was conceded by counsel for appellee in arguing this case orally before this court, that the question presented in this case was identical with that in the case of New York, etc., R. W. Co. v. Perriguey, supra, and that if the original opinion in that case, which had been rendered prior to such oral argument, was to stand it was decisive of this case, and the judgment would have to be reversed.
There is some conflict in the answers to the interrogatories as to just when the decedent first saw that the light on the switch target was not burning, but that he knew it when his engine was mpre than a quarter of a mile distant I think is undisputed, and also that after he became cognizant of the danger he made no effort to stop his train, neither did he attempt to slacken its speed.
Under the rules-of the company, made for the operation of its trains, and with which the decedent was familiar, the jury find it was the duty of both the decedent and his engineer to be vigilant, and to act with the utmost promptness in stopping the train whenever anything which might be taken as a signal of danger was seen. They were to take no risks.
If signals of safety were not shown at any point where they ought to be, it was the duty of the fireman to inform the engineer, and his duty to stop or go carefully until assured that it was safe to proceed. That they discovered the danger, the engineer when more than half a mile away and the fireman when between a quarter and a half mile distant, and that they made no effort either to stop or even slacken the speed of the train, which was then running at the rate of forty miles per hour, is also found by the jury, and they find further that the train was *506 equipped with air brakes and other appliances for stopping, which were so constructed and arranged as to be operated by either the engineer or fireman, which would have enabled those on the engine to have stopped the train within a quarter of a mile.
Without a rule of the company imposing it as a duty those in charge of and operating a locomotive hauling a passenger train should exercise the greatest vigilance for the safety not only of themselves, but of those helplessly in their charge, who are so situated as to be without the means of knowing of approaching danger or the power to avert it. The instinct of self-preservation would lead one to exercise -at least ordinary care, and to fail in the performance of this duty is not merely evidence of negligence, but is of such a degree as to evince a total disregard of consequences.
When an employe disobeys a rule established by his employer for the carrying on of his business, and the disobedience proximately contributed to the employe’s injury, he can not recover although the employer’s negligence also contributed thereto. Pennsylvania Co. v. Whitcomb, Admr., 111 Ind. 212; Matchett v. Cincinnati, etc., R. W. Co., 132 Ind. 334.
For it is well settled in this State that one seeking to recover for an injury by reason of the negligence of another must show affirmatively not only that the defendant’s negligence caused the injury, but that he himself in no way contributed thereto. That is, that he omitted no duty which, if observed, would have prevented the injury. Toledo, etc., R. W. Co. v. Brannagan, Admx., 75 Ind. 490; Stoner v. Pennsylvania Co., 98 Ind. 384; Lyons v. Terre Haute, etc., R. R. Co., 101 Ind. 419; Cincinnati, etc., R. R. Co. v. Butler, 103 Ind. 31; Indiana, etc., R. W. Co. v. Greene, Admx., 106 Ind. 279; *507 City of Fort Wayne v. Coombs, 107 Ind. 75, and cases cited.
For where two causes combined produced an injury, one of which causes is the result of the negligence of the injured party himself, he can not recover damages from the party whose negligence produced the other cause, for the reason that the injured party’s own negligence was a factor in bringing about the result.
The debatable question that now confronts us is: Did the failure of the decedent to stop or slacken the speed of his train in anyway contribute to his injury? A sufficient answer to this is, that had he stopped his train as he could and should have done, he would not have been injured. This failure on his part to do his duty was the direct cause of the collision which resulted in his death. Whether the failure to stop the train was the disobedience of the decedent or his engineer, Bickle, such disobedience was, nevertheless, the direct and proximate cause of the collision which resulted in decedent’s injury. Under such circumstances the appellant is not liable. I am compelled, therefore, to dissent from the views expressed by the majority of the court.
Filed Oct. 10, 1894.