John Bartnik, an Infant, by Francis Gottsberger, his Guardian ad Litem, Respondent, *v.* Erie Railroad Company, Appellant.

*Negligence — passenger injured while standing near the wheel used in fastening a ferryboat to the bridge — presumption of negligence — exercise of the utmost human skill — res ipsa loquitur.*

A passenger who, upon entering upon the bridge leading to a ferryboat, steps to the side of the gangway for foot passengers in order to avoid the throng of persons who are coming from the boat, and while standing in front of the wheel used in fastening the boat to the bridge, in a space not railed from the foot passengers' gangway, is injured as a result of the breaking of a link in a chain which supports in part the weight of the bridge, in consequence of which a rod attached to such chain falls on him and breaks his leg, is not, as a matter of law, guilty of contributory negligence.

Proof of the facts above stated creates a presumption of negligence on the part of the owner of the ferry.

In such a case the court may properly charge the jury that the defendant was required to exercise the utmost human skill, care, vigilance and foresight for the protection of its passengers, and that the rule applied as well to the apparatus and appliances of the bridge as to the machinery of the ferryboat itself; the bridge being properly considered as an appliance used in the very transportation itself, the improper condition or management of which would

present a situation from which grave injury might be expected, and which, therefore, imposed upon the carrier's servants the duty to exercise the utmost skill and foresight to avoid it.

It is not necessary that a contractual relation should exist between the parties in order to make the doctrine of *res ipsa loquitur* applicable.

Appeal by the defendant, the Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 24th day of May, 1898, upon the verdict of a jury for $4,000, and also from an order entered in said clerk's office on the 26th day of May, 1898, denying the defendant's motion for a new trial made upon the minutes.

*Frederic B. Jennings* [*Charles Mac Veagh* with him on the brief], for the appellant.

*William M. Mullen,* for the respondent.

Cullen, J. :

The plaintiff entered into the ferry house of defendant for the purpose of crossing from Jersey City to New York. As the boat from New York came into the slip the gates in the ferryhouse were raised and passengers were allowed to go on the bridge. To avoid the throng of persons who were coming from the boat, the plaintiff stepped to the side of the gangway for foot passengers and stood in front of the wheel that is used in fastening the boat to the bridge. While there a link in a chain which supports in part the weight of the bridge broke, and a rod to which it was attached fell on the plaintiff, breaking his leg. The action is brought to recover damages for that injury.

The appellant contends that the plaintiff was guilty of contributory negligence in assuming the position in which he was at the time of the accident. The evidence for the defendant tended to show that the place where the plaintiff stood was railed off from the foot passengers' gangway. This was denied by the plaintiff. We think that the question of contributory negligence was one of fact for the jury in case they found there was no railing there at the time. This case is very similar to that of *Hazman* v. *The Hoboken Land & Improvement Co.* (50 N. Y. 53). In that case the plaintiff, to avoid

the crowd of outgoing passengers, had stepped on the stringer that separates the gangway for teams from that for foot passengers. While in this position he was injured by the shaft of a wagon, the horses drawing the vehicle having slipped and fallen in consequence of the improper condition of the bridge. It was held that it was not contributory negligence, as a matter of law, for the plaintiff to stand on the stringer. The court said : " It was not necessarily or ordinarily a place of danger, and the plaintiff had no reason to apprehend such an accident as occurred." So in this case the plaintiff had no reason to expect or anticipate the breaking of the chain or the fall of the iron rod. It may be that in some respects the position of the plaintiff was naturally dangerous. He might properly expect to receive greater shock there, from the impact of the incoming boat on either the ferry rack or bridge, than if he stood further back. Had he been thrown into the water, or otherwise injured from such an occurrence, it might well be argued that he assumed the risks of his position. But the accident that happened to him in this case was the very thing there was no reason he should anticipate or foresee; and as long as he was not a trespasser in assuming his position, the question of his negligence was for the jury.

The only evidence on the part of the plaintiff to establish the negligence of the defendant was proof of the occurrence of the accident itself. The plaintiff argues that the doctrine of *res ipsa loquitur* only applies " When the relation of carrier and passenger exists and the accident arises from some abnormal condition in the department of actual transportation." We think that even within this rule the plaintiff made out a *prima facie* case. But the proposition is incorrect. In the leading case where the doctrine of *res ipsa loquitur* was applied there was no contractual relation between the parties (*Mullen* v. *St. John*, 57 N. Y. 567), and this court has recently held that the relation between the parties does not control the application of the rule. (*Jones* v. *Union Railway Co.*, 18 App. Div. 267.) In the latest case in the Court of Appeals, that of *Hogan* v. *Manhattan Railway Co.* (149 N. Y. 23), the plaintiff was driving a coal cart on the street under the elevated railroad, when an iron bar fell from that structure and injured him. Men were working thereon at the time. It was held that the evidence raised

the presumption of negligence; and it is said by Judge BARTLETT: "This being so, it is further assumed that buildings, bridges and other structures properly constructed, do not ordinarily fall upon the wayfarer; so, also, if anything falls from them upon a person lawfully passing along the street or highway, the accident is *prima facie* evidence of negligence, or, in other words, the presumption of negligence arises." Nor was the evidence given on behalf of the defendant to rebut the presumption of negligence conclusive. The defendant proved an inspection of some kind, repeated at intervals, but the character of the inspection and its sufficiency might properly be the subject of criticism. The credibility of the witnesses was also to be considered. On the whole, we think the question was properly submitted to the jury.

The learned trial court charged that the defendant was required to exercise the utmost human skill, care, vigilance and foresight for the protection of its passengers, and that the rule applied as well to the apparatus and appliances of the bridge as to the machinery of the ferryboat itself. To this the defendant excepted. We think the charge was correct, as applied to the case before us, and well supported by the authorities. Carriers of passengers are not in every branch of their service held to this strict accountability. But the rule has never been relaxed as to the condition of the machinery, appliances, cars and boats, or other vehicles of transportation. (*Stierle* v. *Union Railway Co.*, 156 N. Y. 70.) The defendant's bridge should not be considered as merely an incident to its principal duty of transportation, and as similar to a platform or waiting room, but as an appliance used in the very transportation itself. It seems to have been so considered in *Hazman* v. *The Hoboken Land & Improvement Co.* (*supra*). An insecure condition of the bridge or its improper operation and adjustment might lead to most serious accidents. So that even if not considered as technically an appliance in the transportation itself, its improper condition or management would present a "situation from which grave injury might be expected and which, therefore, imposed upon the carrier's servants the duty to exercise the utmost skill and foresight to avoid it." (*Stierle* v. *Union Railway Co.*, opinion on motion for reargument, 156 N. Y. 684.)

The defendant's motion to strike out the testimony of the witness Dr. Pfieffer was too broad, and was properly denied. The plaintiff broke his leg a second time. For this the defendant was in nowise responsible, and so the trial court charged. But that did not render all testimony as to the condition of the plaintiff's leg at the time of the trial incompetent. So far as the testimony of the witness related to the condition of the leg at the point of the first fracture, and due to that cause, it was strictly relevant.

The judgment and order appealed from should be affirmed, with costs.

Judgment and order unanimously affirmed, with costs.